42 C.C.P.A.(Patents)

### Application of Thomas B. LOSEY.
### Patent Appeal No. 6070.

United States Court of Customs and Patent Appeals.
Feb. 8, 1955.

**458**

S. Austin Wier, Dallas, Tex., for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY and COLE, Judges.

COLE, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection for lack of invention of claims 1, 2, 4, and 7 of appellant's application for a patent on subject matter relating to an "Adjustable Well Swab" (a type of fluid lifting plunger) used in the oil industry for lifting fluid in a tubular conduit in an oil well. Eight claims drawn to a well swab assembly were allowed.

The appealed claims are directed to a structural member of the well swab assembly known as a "swab cup." This cup functions as the sealing or packing member in the swab assembly. It is removably carried in a thimble or supporting base, a central passage being provided through the cup and through the thimble. In this passage, a hollow mandrel is disposed upon which the swab cup is mounted.

Well swabs have long been employed by oil field engineers to lift liquid from a well prior to the installation of pumps, or before the well begins to flow, or when the well has ceased to flow and pumps can no longer be successfully utilized. When lowered into the oil pipe casing, the swab traps the liquid in and above the swab cup, the weight of the fluid so trapped causing the cup to expand on upward movement of the swab, thus effecting a seal with the well pipe. In other words, the swab cup expands as it takes on its load of liquid, and spreads outwardly to engage the pipe wall in a sealing operation.

The foregoing generalized structural description of the well swab, and the function of its associated swab cup member, is well known in the art.

In his specification, appellant states that swab cup structures of the prior art are not sufficiently flexible to allow for accommodation in well pipes of different internal diameters. In practice, therefore, a great multiplicity of different sizes of swab cups has been heretofore required.

Appellant's claims on appeal define a swab cup which is either manually or automatically adjustable to control the cup diameter, thereby permitting adjustment of such cup to irregular sizes, shapes, and deformities of the well pipes in which it is used. Claim 1 is representative of the structure defined in the claims on appeal, reading as follows:

"1. In a well swab, a yieldable swab cup; reinforcing ribs carried by the yieldable material forming the cup wall, the ribs being provided with free ends extending above the wall; a floating retaining ring carried solely by said ribs and being so arranged about said free ends thereof as to control their outward movement; and a tubular member so arranged within said ring as to limit their inward movement."

As indicated by the above representative claim, the upper ends of the reinforcing wires or ribs come within, but are not attached to a "floating" retaining ring. The ribs project above the cup lip proper, curve inwardly, and have their extreme upper ends deformed outwardly. Each rib flexes independently of the other ribs. The "floating" ring is disposed around the ribs immediately below the outwardly deformed ends, acting to limit the outer expansion of such ribs while permitting free contraction thereof toward the swab axis or mandrel. The range of adjustment may be determined by using rings of different sizes and physical characteristics. Elastic retaining rings, for example, allow wider ranges of accommodation than nonelastic retainers. Such rings are readily replaceable when a different diameter of ring is necessary. By merely constricting the ends of the ribs inwardly below the ring, the ring may be slipped off the ribs and the desired replacement made.

Each of the claims on appeal calls for the "floating" ring and for the upper ends of the wires to be free of fixed attachment so that the ribs may move laterally and vertically with relation to the loose "floating" ring. The lower parts of the flexible ribs are, as stated in the claims, carried by the yieldable (usually a rubber-like substance) material forming the cup wall.

The flexibility in operation of the instant structure is well illustrated by appellant in his specification as follows:

"* * * The responsive accommodation of this cup is instant and accurate and extensive. It readily fits itself into any tubular member in which it may be made to move, reacting to the load [of fluid] carried by it. This cup is so elastic and sensitive in its automatic accommodation that one single normal size of cup may be made to fit and work perfectly in well pipe or casing of various sizes and of varying internal diameters, even in the same string of pipe.

"The unloaded cup will not be required to fit the walls of the casing. In fact, it should be employed in such size as will not actually contact the sides of the casing while it is being lowered therein (free of load). It will expand outward instantly as the load [of fluid] is caught, so that the load is then supported within the cup. The [flexible] ribs will move outwardly to furnish appropriate strong steel fingers or skids to allow the unobstructed movement of the cup along the sidewall of the casing and through and beyond couplings on the casing, notwithstanding the presence of open threads in the coupling or rough ends of the casing itself. The rubber-like cup body is fully protected by these free floating ribs, notwithstanding that they are so extremely self-accommodating in response to varying loads."

As aforesaid, the structural features principally relied upon by appellant to impart patentable invention to his swab cup are the spaced ribs extending free ends upwardly from the elastic cup wall, and the "floating" ring disposed on the outside of the free rib ends to restrain their outward flexure.

In rejecting appealed claims 1, 2, and 4, the examiner relied upon the disclosure of the patent to Segelhorst et al. (1,793,644), issued February 24, 1931. Appealed claim 7 was held unpatentable by the examiner over Segelhorst in view of the patent to Taylor et al. (2,305,282), issued December 15, 1942. The Board of Appeals affirmed the examiner's use and application of these references in rejecting the claims on appeal.

The disclosure of the Segelhorst patent is of controlling importance. That reference shows a well swab designed especially for use in oil wells having tapered tubing, the swab cups mounted on the mandrel or tubular member being of different sizes to fit different sizes of tubing in a single string of pipe. The actual construction of Segelhorst's swab cup is

not described in that inventor's written specification, the patentee merely stating that such cups may be made of any standard construction. The drawings accompanying the Segelhorst specification, however, show a cup with a presumably yieldable body carrying reinforcing wires which extend upwardly and are bent outwardly beyond the swab cup body. The upper curved ends of the wires or ribs are surrounded or embraced within a retaining ring. The drawings do not disclose whether the ring is loose (or "floating") or secured to the ribs ends.

The Board of Appeals, in its review of the examiner's action in rejecting the appealed claims based solely on the Segelhorst disclosure, stated its belief that the reference drawings clearly showed the retaining ring in the same relationship to the reinforcing wire ribs as that relationship is defined in the appealed claims, except as to whether Segelhorst's retaining ring was secured to his ribs or was "floating." The board was nevertheless of the opinion that the reference drawings, regardless of their actual disclosure relative to the retaining ring, suggested to the normally skilled worker in the art either a ring attached to the wires or one not attached to the wires, these being the only alternatives. The board accordingly sustained the rejection of appealed claims 1, 2, and 4.

As to appealed claim 7, which specifies that the retaining ring is arranged exteriorly about the floating reinforcing ribs, such ribs being attached to the elastic swab body by "being bonded therein," the board combined the suggestion presumed by it to be clearly contained in Segelhorst with the patent to Taylor, supra, the latter reference undeniably showing a swab in which the wire reinforcing members are carried in and bonded to the elastic wall of the swab. The board, therefore, also sustained the rejection of appealed claim 7.

As the reference drawings in Segelhorst do not explicitly disclose a "floating" retaining ring in relationship to free upper rib ends, the issue for deter-mination here, simplified and condensed, amounts to this: Would it be obvious, in view of what Segelhorst has in fact disclosed in his reference drawings, either intentionally or otherwise, to use a "floating" retaining ring to control the outward movement of the flexible upper ends of the wire ribs? In resolving this question, we think it is proper to consider the Segelhorst drawings, and what they might or might not suggest, in the light of the well swab art at the time appellant conceived his present structure.

The Patent Office authorities do not dispute the fact that swab cups principally used in the oil industry prior to appellant's device consisted mainly of a rubber cup body protected by a basket-like arrangement of vertically disposed wires which were somewhat loosely placed in parallel and spaced grooves about the outside of the cup body. These wires or ribs extended above the cup wall, the upper ends of such wires curving inwardly (with outwardly turned hooks on the outer extremities) and being collected and held in fixed relationship, both laterally and longitudinally, by a retaining ring. The retaining ring contained individual holes through which the upper hooked ends were individually threaded. In brief, therefore, the wires or ribs of the swab cup in use prior to appellant's device (which appellant refers to as the "standard" swab cup) were fixedly attached to the ring and did not "float." Such cup construction did not permit the upper ends of the wires or ribs to flex either laterally or vertically, thus seriously limiting the accommodation of such cup to pipes of varying diameters.

It is clear from the Segelhorst reference that the patentee provided varying sizes of cups to fit varying sizes of tubing. Hence, it would seem manifest that Segelhorst did not intend to provide for a ring that "floats" about the upper free ends of the wire ribs so that the cup would be capable of conforming itself to different sizes of tubing. The respective disclosures of Segelhorst and appel-

lant are therefore opposites in a sense, appellant's device to a large extent doing away with the necessity of using different sized swabs because of differences in the internal diameters of well pipes. As the advantages provided by the structural relationship of free upper rib ends to a "floating" ring in a yieldable swab cup are numerous, increased flexibility by free inward movement of the wire ribs toward the swab axis being foremost, we are inclined to feel that regardless of what the reference drawings disclose Segelhorst did not personally appreciate the value of appellant's rib and ring relationship, it being other than an obvious mechanical expedient to him.

The Segelhorst drawings are, however, effective as a reference for whatever is clearly disclosed therein. Similarly, the drawings are effective for whatever they clearly suggest to the skilled worker in the art. We cannot agree with the board in its conclusion that to build a swab either with a ring that "floats" or with one that is fixed to the ribs is clearly suggested (and hence obvious) by the reference drawings. We do not believe that such drawings, admittedly uncertain in disclosure, would raise a train of thought in the mind of the worker skilled in the art leading him to produce the device set forth in the appealed claims. Concededly, appellant's device is new and useful, and represents an advantageous departure from prior art swab cups employing reinforcing ribs having their upper ends threaded or welded into individual holes in a retaining ring. It seems to us to be an arbitrary and unrealistic approach to the problem now before us to conclude, in effect, that while a device has been used for many years which is inferior in functional operation to another and later device, production of the latter would be but an obvious mechanical expedient.

With respect to the value and advantages of his structure on appeal, the appellant states in his brief as follows:

"(1) The fact that the ends of the wires are free (and not fastened or hooked into a retaining ring) allows great flexibility in the cup. A single cup, so made, will snugly fit the inside of a pipe string made up of pipes having differing internal diameters, and continue to hold and lift its full load of oil. This is so because the wires of the cup are not hooked into or fixed to any metal object whatsoever. Appellant's wires are not fastened to any metal, at either end of the wires or in the middle.

"(2) Appellant's wires are always free and elastic. They readily yield (both inwardly and outwardly, and also vertically) with the yielding of the rubber-like body of the cup; and they are left free to move either individually or collectively upon the elongation, contraction or expansion of the cup wall.

"(3) The extreme flexibility provided by Appellant's novel construction gives his cup several great advantages. One advantage is greatly extended life. Its instant flexibility saves it from destruction by abrasion and wear against the deformities of a well pipe and against the foreign materials encountered within the pipe.

\*　　\*　　\*　　\*　　\*

"(6) A further advantage is provided by Appellant's construction which employs a floating ring around the free ends of the cup wires. Such a ring prevents the free ends of the individual wires from escaping outwardly and becoming bent against, or hung up under, obstructions encountered (with resultant damage or destruction of the cup). Yet, the floating ring in no way restrains the inward movement of the wires or the cup wall. The standard 'hook-in-ring' construction most certainly restrains the conven-

tional cup in both inward and outward movement.

\* \* \* \* \*

"(8) Appellant's cup is easier and cheaper to make than conventional cups because of the complete absence of the tedious hand labor involved in threading and hooking wires into holes heretofore always provided and made to receive and hold both ends of the wires; and no welding of metal to metal parts is employed in Appellant's cup, though frequently employed in the old rigid cups.

"(9) Furthermore, Appellant's ring is loosely disposed about the ribs so that it may be easily removed and replaced by a ring of different diameter. Thereby the cup may be further (and quickly) adjusted to fit different sizes of pipe. Furthermore, if the ring becomes distorted or damaged, as is sometimes the case, it may be easily (and almost instantly) replaced without the necessity of replacing the entire cup."

Frequently in the after-light of a patent applicant's own disclosure is the view expressed that what has been disclosed thereby is simple, not inventive, and such as should have been clearly obvious to those possessing ordinary skill in the art. In this respect, appellant's device does seem simple and somewhat obvious; yet, we think that in fair and proper perspective, as illustrated herein, appellant's disclosure of a swab cup having free ended ribs and a floating ring thereabout amounts to invention.

Appealed claim 7, however, does not disclose whether the retaining ring is "floating" or fixedly attached to the ribs. The claim merely states, as aforesaid, that the retaining ring is arranged exteriorly about the floating reinforcing ribs, and that the lower part of such ribs are carried in and bonded to the elastic wall of the cup body. In the light of the foregoing discussion, it is manifest that the structure defined in this claim is without patentable significance in view of the prior art disclosure of the

Segelhorst and Taylor patents in combination.

For the reasons hereinbefore stated, we affirm the decision of the Board of Appeals approving the examiner's rejection of claim 7, but reverse its approval of the rejection of claims 1, 2, and 4.

Modified.

On account of illness, GARRETT, Chief Judge, did not participate in the hearing or decision of this case.

JOHNSON, Judge, dissents as to reversal of claims 1, 2, and 4.